Gary G. Colbath
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
188 W. Northern Lights Blvd., Suite 700
Anchorage, Alaska 99503
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: gary_colbath@fd.org

*Counsel for Defendant Jun Liang*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>JUN LIANG, A/K/A HARRY,<br><br>                Defendant. | Case No. 4:23-cr-00013-RRB-SAO-1<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

Defendant Jun Liang, through counsel, Gary G. Colbath, Assistant Federal Defender, moves the Court for imposition of a sentence of **time served (109 days as of sentencing),** together with imposition of a fine, restitution and a short period of supervision. Mr. Liang files this sentencing memorandum in support of his specific sentencing request. This memorandum is made pursuant to the United States Supreme Court decision in *United States v. Booker*, 543 U.S. 220 (2005) and its progeny, and is respectfully submitted in order to provide information to assist the court in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C. § 3553(a). Here, the Court should provide a sentence utilizing the alternatives to incarceration identified in the guidelines' policy statements at U.S.S.G. § 5f1.2 and fashion a sentence of time served as outlined above.

For all the reasons stated herein below and within the government's recommendations for a sentence, a sentence below the custody range of the guidelines is appropriate as a guideline range sentence would be unduly punitive. Instead, a downward departure and variance is necessary to serve the true aims of 18 U.S.C. § 3553(a).

## I. INTRODUCTION

Mr. Liang's sentencing is currently set for January 10, 2025, before the Honorable Ralph R. Beistline, United States Senior District Court Judge for the District of Alaska. The United States Probation Office [USPO] has prepared and filed a Presentence Investigation Report [PSR] at Docket No. 90.

Mr. Liang's sentencing arises from his convictions for offenses related to his employment as tour operator in the Fairbanks area. Jun Liang is a Chinese national. He is a business professional by education and built an LED light company in his home country of China several years ago at an early age. He and his partner sold the business and realized a good profit from their hard work and entrepreneurial venture. Thereafter, Jun was determined to give back much of gains to those less fortunate than he was. TO that end, for almost six years he traveled to other countries donating time and money to struggling communities and volunteering countless hours helping mostly impoverished children with basic needs.[1]

The Court should accept and follow the parties plea agreement and impose a sentence below the guideline range. Coupled with a fine and restitution, a further period

---

[1] Jun's letter to the Court attempts to describe and show some of this activity.

of lengthy custody time is unwarranted. The Court should strongly consider that ICE officials have represented to the U.S. Attorney's Office that immediately following sentencing, permanent deportation proceedings will begin against Mr. Liang. Given that he is simply in this Country on a limited duration work VISA, his status and permission to stay in this Country can easily be withdrawn, with or without cause, by immigration officials.

## II. FACTS

A. <u>Nature & Circumstances of the Case</u>

The facts of Mr. Liang's offenses are set forth in the plea agreement and PSR. His behavior and conduct are something he has become cognizant of and is something he is deeply ashamed about, and something he is remorseful for. Mr. Liang agrees to the government request for restitution of $9,100.55 payable to the BLM. Mr. Liang further agrees that an additional fine may be appropriate, although not anywhere as severe as the government suggests.

After first visiting Alaska, Mr. Liang fell in love with the beauty and grandeur our State has to offer. He wanted to share the wonders of our State and its natural beauty and wildlife with as many people from his homeland and elsewhere as he could. He is an extremely hard-working, giving individual. He opened a tour business with just himself and an occasional employee or two to show others the Last Frontier. He often worked 18–20-hour days to run his tours. Although he did gross meaningful revenue each year,

he also spent substantial sums on tour excursions, lodging expenses, fuel and food all of which were often included in his tour prices.

Chinese is Jun's first and primary language. He speaks some English and understands some as well. He reads almost no English. Despite how things may appear, he did try to comply with the law and government regulations. He bought thousands of dollars' worth of insurance. He submitted permit request applications and communicated often with the BLM and NPS. He cancelled tours and refunded client monies when he was asked to or told he could not operate in certain areas. His language barrier and lack of understanding of many legal concepts or regulations severely impacted his actions and contributed to his non-compliance.

With regard to his primary Lacey Act case, the Court should know that Jun Liang is a non-hunter. He loves animals and really has never wanted to see any animal hurt. He tried to steer any inquiry about Alaskan hunting or wildlife to a photography or wildlife viewing tour and away from actual hunting. He never represented himself as a guide or outfitter, indeed he has never hunted a day in his life, never owned a firearm, and knows nothing about the sport he abhors. However, a neighbor and friend of his, co-defendant Brian Phelan, was a hunter. He told Jun that he was a guide, that he was in law enforcement, that he had and could take people hunting and show them success. He said he was licensed to do so and had the equipment to help take others. So, when the requests came for the two hunting trips involved here, Jun simply asked Brian if he could guide these and Brian agreed. Jun took the clients to the AK DF&G to obtain licenses for

*United States v. Jun Liang*
Case No. 4:23-cr-00013-RRB-SAO-1                                                                                                Page 4

the hunters and thought that, coupled with Brian's ability to guide made the "tours" legal. He failed to research, understand and follow the significant regulations governing the outfitting of big game hunts. Again, his trust in others, language barrier, and failure to inform himself of the laws and regulations are what got him trouble.

    B. <u>Jun Liang's History & Characteristics</u>

The PSR sets forth just some of the history and characteristics of Jun Liang. His letter–for all that it is, tells his story in his own words. He is a dedicated and loving son, brother, volunteer and community member. Several things about him present as very unique from the kind of defendant often before the Court. First is his limited speaking and comprehension of English. Despite his time in the U.S., because he worked mostly alone, lived on his own and catered to largely Asian clientele, he has learned only a limited amount of English. This has severely impacted his behavior and conduct. Ultimately, his failures here will cost him the ability to stay here and work. His dream of citizenship will be forever impossible.

### III. SENTENCING GUIDELINES & STATUTORY FACTORS

Mr. Liang agrees with Probation's calculation of the Guidelines in the Presentence Investigation Report ("PSR"). See, Dkt. 90 (PSR). They are unique in a couple respects since he is given an obstruction enhancement and is being substantively charged with the same conduct–conduct he continues to dispute. Moreover, although he has no criminal history points–he does not receive the -2 first time offender reduction as he is deemed to

be the "leader" in this two-defendant case. Nevertheless, he agrees the appropriate calculations–which the Court should not follow–are as follows:

```
Offense Level: U.S.S.G. § 2Q2.1(a)&4B1.3......................................... 13
Acceptance of Responsibility: U.S.S.G. § 3E1.1 ...................................-2
Total Offense Level: ............................................................... 11
Criminal History Points/Category: U.S.S.G. §4A ............................ 11/I
Resulting Guideline Range ................................................. 8-14 months
```

Mr. Liang has a Total Offense Level of 11 after applying a credit for his acceptance of responsibility. He has ZERO Criminal History points, which places him in Category I. The resulting guideline range, from which the Court should begin its sentencing analysis, is 8-14 months in Zone B of the sentencing chart. When considering whether to impose a sentence that includes any term of incarceration, the Court should note that in a case like this, for a defendant like Mr. Liang, the Guidelines recommend the Court consider NOT providing a custody sentence. Application note 4 of U.S.S.G. § 5C1.1 (Imposition of a Term of Imprisonment) provides:

> If the defendant is a nonviolent first offender and the applicable guideline range is in Zone A or B of the Sentencing Table, the court should consider imposing a sentence other than a sentence of imprisonment, in accordance with subsection (b) or (c)(3). See 28 U.S.C. § 994(j). For purposes of this application note, a "nonviolent first offender" is a defendant who has no prior convictions or other comparable judicial dispositions of any kind and who did not use violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with the offense of conviction.

Here, Mr. Liang's guideline range places him in Zone B of the guideline chart. He is a first-time offender with zero criminal history points and his offense is clearly classified as nonviolent. His case naturally did not involve any threats of violence, nor

did he possess a gun or dangerous weapon to accomplish his offense. The undercover agents and Mr. Phelan had to coax Mr. Liang into firing one of the hunting rifles at target practice that Phelan brought along which was the first and only time Mr. liang has ever handled or fired a gun. Under these circumstances, the Court should consider imposing alternatives to further incarceration, including things like a fine or restitution, for the remaining portion of the recommended custody period just as the guidelines suggest for a Zone B defendant. Mr. Liang has some limited ability to give back to the government and the BLM through payment of restitution and be punished by way of a fine in addition to the 109 days of custody time he has spent. This is especially true given that even with a time served sentence he will likely not release from custody as it is expected that ICE will detain him for ultimate deportation following conclusion of his case.

    a. Proper Sentence Under 18 U.S.C. § 3553(a)

The overarching sentencing instruction from the Supreme Court in *United States v. Booker*, 543 U.S. 220 (2005) was "a directive to 'impose a sentence that is sufficient but not greater than necessary' to achieve the sentencing goals in 18 U.S.C. § 3553(a)." Extended discussion of the post-Booker changes to sentencing is unnecessary given this court's familiarity with *Rita v. United Sates*, 551 U.S. 338. 358 (2007) (sentencing court should not presume advisory guideline range is reasonable); *Kimbrough v. United States*, 128 S.Ct. 558, 564 (2007) (same); *Nelson v. United States*, 129 S.C. 890,892 (2009) (per curiam) (same).

Today, the Court is fully permitted, indeed obligated, to now focus on individualized sentencing and not on "guidelines sentencing." *United States v. Whitehead*, 532 F.3d 991, 993 (9th Cir. 2008). So, while the Court must properly calculate the guideline range and may logically begin its analysis with a discussion of the guidelines, they are only one of the factors to be considered in determining the sentence. *Booker,* at 764-65 (emphasis added). The Court is free to deviate from the guidelines so long as the ultimate sentence imposed is otherwise reasonable. *United States v. Menyweather*, 431 F. 3d 692 (9th Cir. 2005). In this case, however, the Court can provide for a time served sentence (some custody–109 days) coupled with a fine and restitution which would fully follow the guidelines' recommendations and policy statements for a Zone B sentence.

Mr. Liang's personal history and characteristics are set forth on a limited basis in the PSR. These are further described in his letter to the Court explaining some of his past work and travels after leaving his home country. His past speaks volumes about who he is as a person, a son, a brother, a co-worker, a volunteer, and a humanitarian.

Jun is a soft-spoken, gentle man. He is a man who is kind, loving, smart, hard-working, caring, thoughtful and remorseful. He has never been involved in the criminal justice system prior to this series of events related to his attempts to operate a business here in Alaska. Despite his struggles here, he excelled during his education and in his past business in China where he fully understood the rules and regulations governing his conduct. Indeed, he has always sought to improve his skills and knowledge, although he

found difficulty navigating the American business and governmental regulatory system on his own.

      b. Need for Incarceration

As noted above, the Guidelines suggest the Court consider **not incarcerating** Mr. Liang, but rather impose a sentence with various alternatives to custody. He has already served 109 days custody (as of sentencing) which has been torturous for him. Mr. Liang has an exceptionally low risk of recidivism, given he has lost his tour business and most of his business assets coupled with the fact that he will be deported in short order following sentencing. Even if that were not to occur, he plans to leave Alaska. He is 41 years old, a first-time offender, educated, and employable. His conduct is clearly aberrant in comparison to his lifetime of otherwise lawful behavior. As such, these circumstances present exactly the type of situation that the guidelines contemplate for a deviation from a use of custody and instead apply the use of alternatives to a lengthy custody sentence described by the Guideline's policy statements.

In imposing the least sentence sufficient to account for the need to protect the public from further crimes of Mr. Liang, the Court should consider the statistically low risk of recidivism presented by Mr. Liang's present and likely future circumstances. He is no longer operating a tour company. He has lost many of his assets. He is selling his home. He is staged for deportation. He has given up his work and is resigned to leave Alaska forced or not.

c. Need to Avoid Unwarranted Disparities

The Court must consider the need to avoid unwarranted disparities among defendants with similar criminal histories convicted of similar criminal conduct. See 18 U.S.C. § 3553(a)(6). Mr. Liang agrees with the government that a sentence with a custody period below the guideline's range low end but that includes a fine and restitution will not create any unwarranted sentencing disparity. This is very true in a victimless, financial based crime situation involving a first-time offender. It is even more true given the additional immigration consequences that the conviction exposes Mr. Liang to.

d. Need to Provide the Defendant with Rehabilitation and Treatment

Next, while rehabilitation and treatment needs are relevant considerations for the Court when evaluating a defendant's sentence under § 3553(a), both the government and probation accurately note that Mr. Liang is not in need of educational, vocational, or medical treatment. Again, his immigration consequences will largely dictate his ability to rehabilitate and get back on his feet, which will necessarily happen outside of Alaska.

e. Restitution & Fines

Finally, restitution is an important issue under the sentencing statute for the Court's consideration. Mr. Liang will agree to the requested restitution to the BLM ($9,100.55) and can pay it immediately if ordered.

With respect to a fine, the Court should consider many things. First, the guideline range low end is $4,000. For his previous Operating without a Permit Citation, Mr.

Liang was fined the standard, bond schedule amount of $400. The government has seized and forfeited over $73,000 and a valuable Mercedes vehicle from Mr. Liang already. And most significantly, these offenses have shut down his tour business completely, costing him over $100,000 in income just since the cases' inception. A fine in the range of $5,000-$10,000 is entirely sufficient to fully punish Mr. Liang on top of the custody time he has spent, the restitution he will owe, the forfeitures he has suffered and the permanent loss of his business he must endure. All of these in addition to what will likely be his life-long expulsion from this Country after his legal matters are done should limit the Court's consideration of a fine to $10,000 or less.

## IV. CONCLUSION

Jun Liang is sorry for his actions, whether it is apparent or not, he really wanted to be a successful, positive Alaskan business owner who showed off our great State to the world. He failed to understand and do all that was necessary to legally pursue these dreams, and he is sorry for his conduct. He knows he has let down his family and the community. He's ashamed, remorseful and wants to move forward. He accepts responsibility. The issue becomes now, what the Court's response should be, under the law and all the sentencing factors uniquely applied to him and this situation. A further custody sentence is not necessary nor warranted. With no criminal history whatsoever, and Mr. Liang's conviction for a non-violent offense, a continued custodial sentence would be greater than necessary to meet the objectives of § 3553(a). The ultimate goal accomplished by the requested sentence here of time served, restitution, a nominal fine,

and supervision which should be terminated when deportation begins. And finally, Mr. Liang will make full restitution as ordered by the Court.

DATED at Anchorage, Alaska this 3rd day of January, 2025.

Respectfully submitted,
FEDERAL PUBLIC DEFENDER
DISTRICT OF ALASKA

*/s/ Gary G. Colbath*
Gary G. Colbath
Assistant Federal Defender

Certificate of Service:
I hereby certify that I electronically filed the foregoing and any attachments with the Clerk of Court for the United States District Court for the District of Alaska by using the district's CM/ECF system on January 3, 2025. All participants in this case are registered CM/ECF users and will be served by the district's CM/ECF system.
*/s/ Gary G. Colbath*